UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOMO THOMAS,
#392264,

        Petitioner,                        Civil Action No. 19-CV-10801

vs.                                   HON. BERNARD A. FRIEDMAN

DEWAYNE BURTON,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

        Petitioner, an inmate at the Muskegon Correctional Facility in Muskegon, Michigan,[1] filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, petitioner challenges his conviction for two counts of first-degree premeditated murder, MICH. COMP. LAWS § 750.316(1)(a). For the following reasons, the Court shall deny the petition. The Court shall also deny petitioner a certificate of appealability and leave to proceed in forma pauperis.

### I.    Background

        Petitioner was convicted following a jury trial in Wayne County Circuit Court. The Michigan Court of Appeals summarized the relevant facts as follows:

        Defendant was convicted of murdering his estranged wife, Tocarra
        Sims, and her boyfriend, Martin Thomas (no relation to defendant),

---

[1]    Although the Muskegon Correctional Facility is located within the Western District of Michigan, the state court that convicted and sentenced petitioner is located within the Eastern District of Michigan. Therefore, pursuant to 28 U.S.C. § 2241(d), both districts "have concurrent jurisdiction to entertain [petitioner's] application" for a writ of habeas corpus.

during the evening of January 4, 2014, or the early morning of January 5, 2014. Tocarra's teenage son discovered the bodies when he returned to Tocarra's home on January 5, 2014, after spending the night at his grandmother's house. The victims died from blunt force trauma, and their injuries were consistent with those inflicted by a two-by-four board with protruding nails, which was discovered inside the house.

There were no eyewitnesses to the homicide. At trial, the prosecutor introduced evidence that Tocarra had filed for divorce and obtained a personal protection order ("PPO") against defendant in October 2013. Tocarra's son testified that a few days before the homicide, defendant forcibly entered Tocarra's home, argued with her, and threatened her. Defendant's cell phone records indicated that his phone traveled to the area of Tocarra's home and returned to the area of the house where defendant was living with his girlfriend during the early morning hours of January 5, 2014. Likewise, a vehicle matching the description of a Grand Marquis owned by defendant's girlfriend was captured on a surveillance video recorded by a business near Tocarra's house on the night of the offense. The prosecution also introduced evidence that defendant assaulted a prior domestic partner, Cassandra Arnold, by beating her with an aluminum baseball bat in 2008.

Gary Lewis, who regularly conversed with defendant while they were incarcerated in the Wayne County Jail, testified that defendant confessed that he had killed his wife and her boyfriend by beating them with a statue. During his testimony, he recounted several details of the murder that he learned from his conversations with defendant, which were consistent with other evidence admitted at trial.

*People v. Thomas*, No. 326806, 2016 WL 5405232, at *1 (Mich. Ct. App. Sept. 27, 2016).

Petitioner's conviction was affirmed on appeal. *Id.* The Michigan Supreme Court denied leave to appeal in standard form order, *People v. Thomas*, 894 N.W.2d 48 (Mich. 2017), and the United States Supreme Court denied certiorari. *Thomas v. Michigan*, 138 S. Ct. 1289 (2018).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I.    Evidence of other uncharged acts committed by a defendant is not admissible under [Michigan Rule of Evidence ("MRE")] 404(b) unless the evidence of the uncharged act is relevant to showing a material fact other than the defendant's

general propensity to commit the charged crime.  Evidence of:  (1) the Defendant's assault against Cassandra Arnold in 2008; (2) the Defendant's argument with Tocarra Sims a week before the murders; (3) the Defendant's probation violation for threatening and intimidating behavior; and (4) the Defendant's conviction for six to eight other uncharged assaults, was not admissible under MRE 404(b). Therefore, the trial court abused its discretion in admitting the evidence of other uncharged acts committed by the Defendant.

\* \* \*

II.    A witness is not competent to testify when the witness lacks the capacity and sense of obligation to testify truthfully and understandably.  Gary Lewis' testimony was so inherently incredible that the record shows that Lewis did not have the capacity and sense of obligation to testify truthfully. Therefore, the trial court erred in finding Gary Lewis competent to testify.

III.    When determining whether sufficient evidence was presented to sustain a conviction, the reviewing court must view the evidence in the light most favorable to the prosecution, and determine whether any rational trier of fact could have found that the essential elements of the crime, including the element of identity, were proven beyond a reasonable doubt.  The evidence, absent the incompetent testimony of Gary Lewis, was not sufficient to identify the defendant as the perpetrator of the murders of Tocarra Sims and Martin Thomas beyond a reasonable doubt.  Therefore, the defendant's conviction should be reversed and the case dismissed.

IV.    The prosecutor has a duty to see that the defendant receives a fair trial, and may only procure a conviction using methods in accord with the fair and impartial administration of justice.    The cumulative effect of the prosecutor's introduction of inadmissible other acts evidence and hearsay denied the defendant a fair trial.  Therefore, the defendant's conviction should be reversed.

(ECF No. 1, PageID.13-14).  The Michigan Court of Appeals addressed and rejected each of these claims on direct appeal.  *See Thomas*, 2016 WL 5405232, at \*1-11,

## II.    *Legal Standard*

As the Supreme Court has stated:

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter "adjudicated on the merits in State court" to show that the relevant state-court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting § 2254(d)). A decision of a state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).

In addition, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The federal habeas court's review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.   *Discussion*

### A.   *Claim I:  Prior Bad Acts Evidence*

Petitioner first argues that he was denied a fair trial due to the admission of prior bad acts evidence. He contends that this evidence was irrelevant, inadmissible, more prejudicial than probative, and admitted in violation of MRE 404(b).

On direct appeal, the Michigan Court of Appeals concluded that the prior bad acts evidence was relevant to the case and therefore admissible under Michigan law. The state appellate court explained:

> Evidence of a defendant's "other crimes, wrongs, or acts" is generally inadmissible to demonstrate the defendant's propensity to act in conformity with those acts. However, other acts evidence may be admissible under MRE 404(b) for other, noncharacter purposes, such as to establish "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material[.]" MRE 404(b) is "a rule of inclusion," and the list of proper, noncharacter purposes under the rule is nonexclusive.

> In sum, evidence regarding a defendant's prior crimes, wrongs, or acts is admissible under MRE 404(b) if (1) it is offered for a proper, noncharacter purpose, (2) it is relevant to a factual issue of consequence at trial, and (3) the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice under MRE 403.

*Thomas*, 2016 WL 5405232, at *2 (citations omitted). The Michigan Court of Appeals addressed the four pieces of evidence that petitioner challenges in his habeas petition – (1) his assault against Cassandra Arnold, (2) his prior argument with Tocarra Sims, (3) his probation violation, and (4)

5

his various uncharged assaults – and determined that each was admissible under MRE 404(b).  *See id.* at *2-7.

The Supreme Court has explained that it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Federal habeas review is "limited to deciding whether a state court conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  The Sixth Circuit has added:

> Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.  Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.

*Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks and citations omitted).

Here, the trial court's admission of the prior bad acts evidence does not entitle petitioner to habeas relief because it did not violate clearly established federal law, nor does petitioner argue as much.  Petitioner merely asserts that the state court abused its discretion by admitting the evidence at trial.  The Sixth Circuit has observed that "[t]he Supreme Court has never held (except *perhaps* within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process."  *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012) (emphasis in original); *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (stating that habeas relief was unwarranted "even if the prior acts testimony was admitted in violation of [state] law").  Because this claim challenges a state court's

application of state law, rather than federal law, this claim is not cognizable on habeas review.
Petitioner is therefore not entitled to habeas relief on his first claim.

### B.  Claim II:  Witness Competency

Petitioner next claims that the trial judge failed to adequately assess Gary Lewis'
competency to testify at trial, as required by MRE 601.[2]  He contends that Lewis' testimony was
delusional and "inherently incredible."  (ECF No. 1, PageID.13).  Petitioner does not cite any
Supreme Court precedent or other source of federal law in support of this claim.  As explained
above, habeas courts generally do not review a state court's application of state law – a rule that
especially applies to the admission or exclusion of evidence.  *See Seymour*, 224 F.3d at 552.  As
petitioner has alleged no violation of "the Constitution, laws, or treaties of the United States," this
claim is not cognizable on habeas review.  *Estelle*, 502 U.S. at 68.

### C.  Claim III:  Sufficiency of the Evidence

Petitioner next claims that there was insufficient evidence to establish his identity
as the murderer.  Specifically, he argues that the police did not recover DNA evidence, fingerprints,
or other forensic evidence necessary to convict him of the crimes charged.  (ECF No. 1, PageID.18,
20).  Petitioner contends that "there was no direct evidence implicating [him] in the murders . . .
[and] [t]he circumstantial evidence was weak and inconclusive."  (*Id*., PageID.20).  Petitioner also
challenges the state court's "reliance on Gary Lewis['] incompetent testimony."  (*Id*.).

It is well established that "the Due Process Clause protects the accused against

---

[2] MRE 601 provides:

> Unless the court finds after questioning a person that the person does
> not have sufficient physical or mental capacity or sense of obligation
> to testify truthfully and understandably, every person is competent
> to be a witness except as otherwise provided in these rules.

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  When reviewing a

claim of insufficient evidence, the question is "whether the record evidence could *reasonably*

support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318

(1979) (emphasis added).  The Supreme Court has explained that

> this inquiry does not require a court to ask itself whether *it* believes
> that the evidence at the trial established guilt beyond a reasonable
> doubt.  Instead, the relevant question is whether, after viewing the
> evidence in the light most favorable to the prosecution, *any* rational
> trier of fact could have found the essential elements[3] of the crime
> beyond a reasonable doubt.

*Id*. at 318-19 (internal quotation marks and citations omitted, emphasis in original).

A "lack of physical evidence does not render the evidence presented insufficient . .

. . [Moreover,] it is clearly established that a jury's verdict may be based entirely on circumstantial

evidence." *Gipson v. Sheldon*, 659 F. App'x 871, 882 (6th Cir. 2016) (citations omitted).  When

considering a claim of insufficient evidence, "[c]ircumstantial evidence is entitled to the same

weight as direct evidence."  *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

"Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not

remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817,

825 (6th Cir. 2006) (internal quotation marks omitted).  In fact, "[c]ircumstantial evidence is not

only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).

---

[3] Under Michigan law, "[t]he identity of a defendant as the perpetrator of the crimes charged is an
element of the offense and must be proved beyond a reasonable doubt."  *Byrd v. Tessmer*, 82 F.
App'x 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 181 N.W.2d 655, 656 (Mich. Ct. App.
1970)).

The Michigan Court of Appeals rejected petitioner's insufficient evidence claim on direct appeal, stating:

> Defendant emphasizes that there is no physical evidence linking him to the homicides, and he dismisses the circumstantial evidence presented by the prosecution as "weak and inconclusive." Contrary to his characterization of the record, the prosecution presented substantial circumstantial evidence from which a reasonable jury could conclude beyond a reasonable doubt that he was the perpetrator of the homicides.
>
> From the evidence discussed . . . , a rational jury could reasonably infer that defendant had the motive and capacity to kill Tocarra and Thomas, that defendant used his girlfriend's Grand Marquis to drive to the victims' house when the crime was committed, that defendant forcibly entered the house through the side door, and that he killed Tocarra and Thomas by beating them with a two-by-four board with protruding nails, which was discovered at the scene.
>
> Defendant's conduct after the homicides further supports the jury's finding of guilt. Defendant tried to evade the police and enter the house while the police were processing the crime scene. He also "deflected" Sergeant Russell's questions by volunteering information about his sexual contacts with Tocarra and his girlfriend. During the interview, he did not ask questions about Tocarra's murder or suggest any suspects. More significantly, he confessed to Lewis that he committed the murders, and Lewis' trial testimony accurately described several details related to the homicides and the subsequent court proceedings. Although Lewis' testimony included some factual inaccuracies, the credibility of Lewis' testimony was for the jury to evaluate.
>
> Viewed in a light most favorable to the prosecution, the totality of the evidence was sufficient to establish beyond a reasonable doubt defendant's identity as the perpetrator.

*Thomas*, 2016 WL 5405232, at * 9-10 (citations omitted).

The Court concludes that the Michigan Court of Appeals reasonably applied federal law in rejecting petitioner's sufficiency of the evidence claim on appeal. Various pieces of evidence supported the jury's conclusion that petitioner was the murderer in this case. Evidence introduced at trial established that petitioner forced his way into Tocarra Sims' house a few days

before the murders, argued with her over their pending divorce, and threatened her. *See id*. at *1. Evidence also showed petitioner's cell phone traveling to the area of Sims' home and returning to the area of petitioner's residence on the night of the murders. *See id*. Evidence further showed that petitioner attempted to evade the police, deflect questions, and enter the house while the police were processing the crime scene. *See id*. at *10. Petitioner also confessed to Gary Lewis that he killed the victims.[4] *See id*. Collectively, the evidence presented against petitioner was more than sufficient for a rational jury to find beyond a reasonable doubt that he murdered the two victims in this case. For these reasons, petitioner is not entitled to relief on his third claim.

### D. Claim IV: Prosecutorial Misconduct

Finally, petitioner claims that the prosecutor committed misconduct by introducing hearsay statements and the above-mentioned prior bad acts evidence at trial. Petitioner specifically challenges certain statements made by Sims' son and mother, both of whom testified that they "knew" petitioner had committed or was involved in the murders. (ECF No. 1, PageID.22). He also challenges Sergeant Kevin Wight's trial testimony indicating that petitioner "refused to provide a sample of his DNA, and then became violent and had to be arrested." (*Id*.). Petitioner states that "[t]he improprieties committed by the prosecution in this case amounted to a laundry list of character assassination and hearsay," the cumulative effect of which denied him "a fair and impartial trial." (*Id*.).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

---

[4] To the extent that this claim questions Gary Lewis' credibility as a witness, it does not entitle petitioner to habeas relief. "[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). When considering a claim of sufficiency of the evidence, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.  The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks and citations omitted).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974).  To obtain habeas relief on a prosecutorial misconduct claim, a petitioner must show that the state court's rejection of this claim on direct appeal "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Parker v. Matthews*, 567 U.S. 37, 48 (2012).

On appeal, the state court noted that petitioner had failed to object to the prosecutor's conduct during trial and thereby failed to preserve this claim on appeal.  *See Thomas*, 2016 WL 5405232, at *10.  The court therefore reviewed petitioner's claim of prosecutorial misconduct for plain error.  *See id*.  The Michigan Court of Appeals explained:

> [D]efendant's claim of prosecutorial misconduct is largely based on the evidence presented regarding his previous assault against Arnold, his threatening and intimidating conduct against Tocarra, and Lewis' reference to his history of unspecified assaults. As previously discussed, evidence concerning defendant's prior misconduct against Arnold and Tocarra was admissible, and the prosecutor was not responsible for Lewis' unresponsive reference to defendant's prior assaults. Likewise, [probation officer Jamal] Womble's testimony that he issued a warrant for a probation violation against defendant was permissible.

> Additionally, testimony by Tocarra's sister that Tocarra obtained a PPO against defendant was relevant and admissible for the same reasons discussed supra, i.e., to demonstrate the animosity between Tocarra and defendant in order to prove defendant's motive and intent.  *See* MRE 404(b); *Unger*, 278 Mich. App at 223; *Aldrich*,

11

246 Mich.App at 114, citing MRE 401. "[P]rosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v. Noble*, 238 Mich. App 647, 660; 608 N.W.2d 123 (1999). Thus, these claims of misconduct lack merit.

Defendant also argues that the prosecutor committed misconduct by eliciting testimony from Sergeant Wight that defendant refused to cooperate with providing a DNA sample. Before the prosecutor called Wight to the stand, defendant moved to preclude testimony regarding this incident on relevancy grounds, but the trial court overruled the objection. It is not improper for a prosecutor to rely on a court's evidentiary ruling, regardless of whether the ruling was correct. *People v. Blackmon*, 280 Mich. App 253, 270 n.7; 761 N.W.2d 172 (2008). Nevertheless, at the end of the trial, the court instructed the jury that it should disregard any testimony regarding defendant's refusal to provide a DNA sample. Even if we assume, arguendo, that the prosecutor's elicitation of this evidence was improper, any prejudice was cured by the trial court's instruction. *See Unger*, 278 Mich. App at 240–241; *Watson*, 245 Mich. App at 586.

In addition, defendant argues that the prosecutor acted improperly by allowing Tocarra's son and Tocarra's mother to testify that they "knew" that defendant killed Tocarra, and by allowing Tocarra's mother to call defendant a liar and a psychopath. However, the prosecutor never elicited any testimony from Tocarra's son indicating that he had personal knowledge that defendant killed the victims. Rather, Tocarra's son specifically testified that he told the police that he believed that defendant was the perpetrator, and that he formed this belief solely based on defendant's hostility toward Tocarra a few days earlier, a fact that was clearly and permissibility established at trial.

Likewise, the prosecutor did not elicit the testimony from Tocarra's mother that she knew that defendant was involved in the murders, that defendant lied when she spoke to him on the phone on January 5, or that defendant was a psychopath. In each instance, her mother's testimony was unresponsive to the prosecutor's questions or interrupted the prosecutor's questions. Similarly, Tocarra's mother also accused defendant of lying and stated that she "knew" that defendant was involved in the murders during defense counsel's cross-examination of her regarding the phone calls that she made to defendant on January 5. The trial court repeatedly directed Tocarra's mother to answer the questions asked, but she continued to interject her comments on these matters during the prosecutor's redirect examination—as well as during defense counsel's recross-

examination—even though both the prosecutor and the trial court reminded her to wait to respond until after a question had been asked and to only answer the question asked. "Unresponsive answers from witnesses are generally not prosecutorial error," and there is no indication that the prosecutor knew in advance that Tocarra's mother would make those statements. *People v. Jackson* (On Reconsideration), 313 Mich.App 409, ——; —— N.W.2d —— (2015) (Docket No. 322350); slip op at 8.

Because defendant has not established any individual errors, we reject his claim that the cumulative effect of these purported errors violated his right to a fair trial.

*Id*. at \*10-11.

Reasonable jurists could not debate the Michigan Court of Appeals' conclusion that petitioner's claim of prosecutorial misconduct did not warrant reversal on appeal; nor does it warrant such relief on habeas review. In denying petitioner's prosecutorial misconduct claim, the Michigan Court of Appeals reasonably applied federal law. Based on the totality of the circumstances, the prosecutor's conduct was not "so egregious" or "so lacking in justification" as to make the resulting conviction a denial of due process. Moreover, the Sixth Circuit has stated that federal habeas courts "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites . . . other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Stewert v. Trierweiler*, 867 F.3d 633, 639 (6th Cir. 2017). Petitioner has cited no such precedent here. Petitioner has failed to meet the "high bar" under *Darden*, which is "made higher still by AEDPA." *Id*. For these reasons, petitioner's final claim for habeas relief is denied.

**IV. Conclusion**

Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue, as petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis because no appeal in this case could be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

s/Bernard A. Friedman

Dated: March 31, 2022
    Detroit, Michigan

Bernard A. Friedman
Senior United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 31, 2022.

**Jomo Thomas #**392264
MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN
MUSKEGON, MI 49442

s/Johnetta M. Curry-Williams
Case Manager

14